UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

CHAMBERS OF
THE HONORABLE GINA L. SIMMS
UNITED STATES MAGISTRATE JUDGE
MDD_GLSchambers@mdd.uscourts.gov

6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770
(301) 344-0627 PHONE
(301) 344-8434 FAX



April 19, 2018

Stephen F. Shea
Elkind and Shea
801 Roeder Rd. Ste. 550
Silver Spring, MD 20910

Gabriel R. Deadwyler
Social Security Administration
6401 Security Blvd. Rm. 617
Baltimore, MD 21235

Subject: *Woldesellase v. Berryhill*[1]
Civil No.: 8:17-cv-01322-GLS

Dear Counsel:

Pending before this Court, by the parties' consent, are Motions for Summary Judgment. (ECF Nos. 2, 3, 13, 14). The Court must uphold the Social Security Administration ("SSA")'s decision if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3) (2016); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence rule "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* This Court shall not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the SSA. *Id.* Upon review of the pleadings and the record, the Court finds that no hearing is necessary. L.R. 105.6. For the reasons set forth below, the Plaintiff's Motion is DENIED and the Defendant's Motion is GRANTED. I am affirming the SSA's judgment.

I. BACKGROUND

Plaintiff filed a Title II Application for Disability Insurance Benefits on behalf of her son, 7-year-old S.N., on July 31, 2012, alleging disability onset of May 29, 2012. (Tr. 143). Plaintiff's application was denied initially (December 4, 2012), and upon reconsideration (July 24, 2013), by the SSA. (Tr. 83, 90). Plaintiff filed a written request for a hearing on September 9, 2013, (Tr. 93), that was granted and conducted on August 12, 2015 by Administrative Law Judge ("ALJ") F. H. Ayer. (Tr. 39). The ALJ issued a decision finding that S.N. was not disabled on October 30, 2015. (Tr. 15). The SSA Appeals Council denied Plaintiff's request for review on March 10, 2017. (Tr. 1). Accordingly, the ALJ's decision became a final and reviewable decision of the SSA. *Id.*

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

Plaintiff filed her appeal to this Court on May 15, 2017, (ECF No. 1), and argues that the ALJ: 1) erroneously evaluated Plaintiff's subjective complaints related to his impairments by using the wrong standard; and 2) improperly concluded that Plaintiff's impairments did not functionally equal a Listing. (ECF Nos. 13 at 2, 6).

## II. DISCUSSION

### A. Evaluation of Subjective Complaints

Plaintiff first alleges that the ALJ erred in his evaluation of Plaintiff's symptoms because he "applied an improper standard in evaluating credibility" of the parental reports regarding the same. (ECF No. 13 at 3). The Court disagrees.

#### 1. Credibility Evaluation Standard

In general, an ALJ should follow the two-step process established in *Chater* to evaluate a claimant's subjective complaints of pain and/or symptoms. *See Chater*, 76 F.3d at 591. The ALJ should first ensure that subjective claims are supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the pain. *Id.* After meeting that threshold, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Id.* at 595. The Fourth Circuit clarifies that a claimant's allegations "need not be accepted to the extent they are inconsistent with the available evidence, *including objective evidence of the underlying impairment*, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges . . ." *Id.* (emphasis added).

The same standard applies when evaluating a child's subjective complaints through his parents' testimony. *See Allen ex rel. D.D.N. v. Commissioner, Social Security*, No. 12-2596, 2013 WL 3816744, at *3 (D. Md. July 19, 2013) (evaluating Ms. Allen's testimony and credibility with regard to ADHD symptoms); *Gerette v. Colvin*, No. 15-12, 2016 WL 1254611, at *8 (W.D. Va. Feb. 2, 2016) ("The ALJ must make specific findings concerning the credibility of the [caregiver's] testimony, just as he would if the child were testifying.") (internal quotations omitted). The ALJ is "not required to accept the caregiver's testimony about the child's symptoms at face value." *Gerette*, 2016 WL 1254611, at *8 (noting that the regulation requires the ALJ to weigh testimony with "all of the evidence, including not only the objective medical evidence, but statements and other information provided by physicians or psychologists and other persons about her symptoms and how they affect her and any other relevant evidence in the case record.").

In *Allen*, the court noted that although the ALJ did not "expressly assign any measure of weight to Ms. Allen's testimony, it is abundantly evident from the ALJ's opinion that he did not find Ms. Allen to be credible on many issues." *Allen*, 2013 WL 3816744, at *3. The ALJ specifically noted areas where Ms. Allen's testimony directly contradicted other evidence in the record to deem Ms. Allen's testimony regarding certain symptoms as unreliable. *Id.* However,

the ALJ also relied on Ms. Allen's testimony "when it appeared to be more consistent with other evidence." *Id.* That court found that the ALJ's consideration of Ms. Allen's credibility and, specifically, the ALJ's acceptance or rejection of the testimony in light of the entire record was supported by substantial evidence. *Id.*

In the instant case, S.N.'s complaints were, as in *Allen*, expressed via his parents' statements. The ALJ first found that claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms. (Tr. 24). The ALJ evaluated the medical evidence, including physicians' reports. (Tr. 24–25). The ALJ noted that Dr. Diwahd, who wrote reports dated from 2009 to 2014, referenced hyperactive behaviors and recommended special education at school and at home. (Tr. 24). The ALJ also considered the reports of Dr. Calbert, a neurodevelopmental pediatrician, who examined claimant in 2012, finding developmental skills that were not regressed and above average Peabody developmental testing scores, but also minor neural motor dysfunction and visual motor delay. (Tr. 24–25). Dr. Calbert, the ALJ notes, prescribed behavior modification and Focalin, which was effective and had no significant side effects. (Tr. 25). The ALJ also took into account the evaluations of state agency physicians Dr. Vaidya, Dr. Holmes, and Dr. Oidick, who corroborated the other physicians' finding of symptoms that could be produced by claimant's impairments. (Tr. 25, 27–33).

Second, the ALJ properly evaluated the parents' statements in light of all of the evidence on the record, including reports and testimony related to S.N.'s symptoms, including those of his parents. (*See* Tr. 24–25). The ALJ considered the following objective evidence to assess credibility: (a) S.N.'s lack of a special education plan; (b) positive responses to medication; (c) a lack of parental "follow through" with the prescribed behavior modification; and (d) S.N.'s good behavior in school. *Id.* In doing so, the ALJ concluded that: (1) the lack of a special education plan was persuasive evidence of non-disabling symptoms; (2) S.N.'s positive responses to medication undermined allegations relating to symptoms severity and disability; and (3) if S.N.'s parents could follow through with behavioral modification at home, S.N.'s behavior would improve to the level that S.N. already displays at school. *Id.* Because the ALJ weighed the entire record to assess the parents' credibility, the ALJ followed the applicable precedent in concluding that substantial evidence supports his findings.

Plaintiff also asserts that there is no need to "provide objective evidence to substantiate the intensity, persistence, and limiting effects of his condition," citing to *Hines v. Barnhardt*, 453 F.3d 559 (4th Cir. 2006) in support. Not only does plaintiff's citing to *Hines* miss the mark, as it addresses an adult with claims of physical pain related to Sickle Cell Disease, the court in *Hines*, consistent with *Chater*, also states, "[i]f an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Hines*, 453 F.3d at 565 (internal quotations omitted). Although there is no requirement to affirmatively require claimant to provide objective evidence, an ALJ must evaluate any available objective evidence in the record. *Id.* Further, the ALJ in *Hines* erred by simultaneously "selectively cited evidence concerning tasks which Mr. Hines was

capable of performing" and "disregarded Mr. Hines' qualification of his activity levels." *Id.* at 566. Here, the ALJ made no such error.

### 2. Specific Identification of Statements

Plaintiff further avers that the ALJ was required to "identify the statements concerning the intensity, persistence, and limiting effects of the Plaintiff's symptoms which he found to be not entirely credible, and failed to explain how he decided which of the Plaintiff's statements to believe, and which to discredit." (ECF No. 13 at 6). But *Chater* prescribes no requirement to identify specific statements, only to include a discussion of evidence weighing for or against credibility. *See generally Chater*, 76 F.3d at 595.

Plaintiff relies on a sentence in *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017), which states, "the ALJ failed to explain in his decision what statements by Lewis undercut her subjective evidence of pain intensity as limiting her functional capacity." (ECF No. 13 at 5). But the Fourth Circuit goes on in the explanatory parenthetical that the purpose of such an explanation is to establish a complete record that includes "a discussion of which evidence the ALJ found credible and why . . ." *Lewis*, 858 F.3d at 866 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). As explained above, the ALJ here fulfilled that requirement and did explain how other pieces of evidence supported his conclusion regarding credibility. (*See* Tr. 22–32).

Plaintiff's reliance on *Bostrom v. Colvin*, 134 F. Supp. 3d 952 (D. Md. 2015), is similarly misplaced. (*See* ECF No. 13 at 5). Unlike here, the ALJ in *Bostrom* made a conclusory determination based on a claimant's undisputed statements. *See Bostrom*, 134 F. Supp. 3d at 960 (noting that that ALJ did not explain how he decided credibility). The statements in the instant case were refuted by numerous other pieces of evidence, all of which were considered in the ALJ's decision. (*See generally* Tr. 25–26) (analyzing the observations of Dr. Calbert, school director Miriam J. Ochoa, teacher Carina Powell, and teacher Faye Holland).

Accordingly, I conclude that the ALJ's assessment of claimant's parents' subjective complaints of pain and his credibility determination were supported by substantial evidence.

### B. Functional Equivalence to ADHD Listing

Finally, plaintiff contends that the ALJ erred in his determination that S.N.'s ADHD was not functionally equivalent to a Listing. (ECF No. 13 at 6). Plaintiff also alleges that the ALJ's failed to properly evaluate evidence—simply adopting the findings of State Agency physicians—in concluding that S.N. had a less than marked limitation in "interacting and relating with others." *Id.* at 7. Defendant counters that the ALJ wrote a full explanation supported by medical and non-medical evidence, and that the ALJ only gave significant weight to the state agency physicians inasmuch as their opinions coincided with the other evidence. (ECF No. 14 at 10). The ALJ's finding of non-equivalence was supported by substantial evidence here.

The Social Security Regulations outline a three-step process for claims involving childhood SSI, where an ALJ should: (1) determine whether claimant had engaged in any substantial gainful activity at any relevant time; (2) determine whether claimant has a medically determinable impairment that is severe; and (3) determine whether claimant has an impairment that meets or medically equals the requirements of a listing or that functionally equals the listing. *See Allen*, 2013 WL 3816744, at *1 (citing 20 C.F.R. § 416.924). At step three, an ALJ may first evaluate whether a severe impairment meets or medically equals a listing before evaluating functional equivalence. *See id.* At issue here is claimant's impairments' functional equivalence to the listings.

The Fourth Circuit has articulated that an ALJ shall undertake an analysis of "broad areas of development or functioning" to determine whether a child's impairment is functionally equivalent in severity to any listed impairment. *See Bryant ex rel. Bryant v. Barnhart*, 63 Fed. App'x 90, 93 (4th Cir. 2003) ("Here, as opposed to considering limitations upon specific activities such as walking, the Commissioner is directed to examine broader areas of functioning.") (citing to 20 C.F.R § 416.926a(c)(5)(v) (1997))[2]. The governing regulation names these six areas as "(i) [a]cquiring and using information; (ii) [a]ttending and completing tasks; (iii) [i]nteracting and relating with others; (iv) [m]oving and manipulating objects; (v) [c]aring for yourself; and, (vi) [h]ealth and physical well-being." 20 C.F.R. § 416.926a(b)(1)(i)–(vi) (2017). A child is functionally limited if he displays "marked" limitations in two of these area or an "extreme limitation" in one area. *Id.* (explaining that a "marked" limitation "seriously interferes with the child's ability to function in that area" and an "extreme" limitation "renders the individual incapable of meaningful function in that area.").

In the instant case, the ALJ did not simply adopt the opinions of Dr. Holmes and Dr. Oidick, the state agency physicians. (*See* Tr. 30). When affording the state agency's physicians' opinions significant weight, the ALJ also specifically references claimant's other medical records, which were analyzed in great detail. (*See generally* Tr. 24–25). The ALJ specifically mentions, from Dr. Calbert's records, claimant's improvement with daycare, medication, and behavior modification. (*Id.*; *see also* Tr. 30) (noting the state agency physicians' opinions "are consistent with" Dr. Calbert's findings). In the course of his careful analysis, the ALJ even discounted a teacher, Ms. Powell's, determination that claimant had no limitations in this area due to the evidence that weighed against her determination. (*See* Tr. 30). The record supports a determination that the ALJ met the substantial evidence standard. (*See generally* Tr. 23–32). *See also Bryant*, 63 Fed App'x at 94 (finding no need for remand when "[t]he ALJ reviewed and discussed [claimant's] medical records, his mother's testimony and evidentiary submissions, reports by teachers and other corroborative evidence submitted on his behalf.").

### III. CONCLUSION

For the reasons stated above, the Plaintiff's Motion for Summary Judgment, (ECF No.

---

[2] Although this case cites an older version of the relevant regulation, the ALJ's decision-making process is the same in both versions.

13), is DENIED and the Defendant's Motion for Summary Judgment, (ECF No. 14), is GRANTED. The SSA's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is directed to CLOSE this case.

      Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

                                          Sincerely,

                                          /s/

                                          The Honorable Gina L. Simms
                                          United States Magistrate Judge